UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED UNION OF ROOFERS,
WATERPROOFERS, AND ALLIED WORKERS,
LOCAL NO. 210, AFL-CIO,
and
JACK LEE and GEOFFREY MCCREARY,
in their capacities as TRUSTEES of the
UNITED UNION OF ROOFERS, WATERPROOFERS,
AND ALLIED WORKERS, LOCAL UNION NO. 210
MONEY PURCHASE PENSION PLAN and
ROOFERS LOCAL UNION NO. 210 JOINT
HEALTH & WELFARE PROGRAM,

                            Plaintiffs,                07-CV-224-JTC

                -vs-

A. W. FARRELL & SON, INC.,
ROOF CRAFT SYSTEMS, INC.,
JOHN W. FARRELL, a/k/a Bill Farrell, and
JOHN T. FARRELL,

                            Defendants.

---

In this action, plaintiffs United Union of Roofers, Waterproofers, and Allied Workers, Local No. 210, AFL-CIO ( "Union"), and Jack Lee and Geoffrey McCreary, Trustees of the Union's Money Purchase Pension Plan and Joint Health & Welfare Program (jointly referred to herein as "the Funds"), seek declaratory, injunctive, and other equitable relief against corporate defendants A.W. Farrell & Son, Inc. ("A.W. Farrell") and Roof Craft Systems, Inc. ("Roof Craft"), and individual defendants John W. ("Bill") Farrell and John T. ("John") Farrell, pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA" or the "Taft-Hartley

Act"). The individual defendants, Bill and John Farrell, have moved for partial summary judgment (Item 20) dismissing the claims brought against them, and for an award of attorney's fees and costs related to the motion.

For the reasons that follow, defendants' motion is denied.

## BACKGROUND

The following background facts are not in dispute. A.W. Farrell is a New York corporation engaged in the business of commercial flat roofing, with facilities in Dunkirk, Horseheads, and Rochester, New York; Solor and Milford, Ohio; and Erie, Pennsylvania. Bill Farrell is the Chief Executive Officer and 100 percent shareholder of A.W. Farrell. John Farrell is Bill Farrell's son. John is the Vice President of A.W. Farrell and manages the company's facility in Erie.

A.W. Farrell is subject to a collective bargaining agreement between the Union and the Erie Construction Council, Inc. (*see* Item 18, Ex. A), governing the work at its Erie and Dunkirk locations. Under the terms of the agreement, A.W. Farrell makes certain payments for each hour worked by covered employees to joint Union/Employer Funds, including the Money Purchase Pension Plan and Health & Welfare Funds administered by the plaintiff Trustees.

Roof Craft is also a New York corporation engaged in the commercial roofing business, with facilities in several cities, including Dunkirk, New York; Cleveland, Columbus and Cincinnati, Ohio; and Erie, Pennsylvania. Roof Craft is owned by Bill Farrell's daughter Kathleen, and another son Mark. Roof Craft is a nonunion contractor and is not a signatory to the collective bargaining agreement.

In their amended complaint, plaintiffs allege that Roof Craft performs identical roofing and related construction work that A.W. Farrell performs for many of the same customers within the scope and jurisdiction of the collective bargaining agreement, but Roof Craft does not make payments to the Funds or pay membership dues to the Union for its employees. Plaintiffs claim that Roof Craft is an "alter ego" corporation of A.W. Farrell, established and maintained in order to evade the obligations of the collective bargaining agreement.

The first and second causes of action set forth claims for relief against the corporate defendants under section 515 of ERISA and section 301 of LMRA, respectively. In the third cause of action, plaintiffs allege that Bill and John Farrell established Roof Craft as an alter ego of A.W. Farrell in order to intentionally and fraudulently evade the obligations of the collective bargaining agreement by concealing "material overlapping of business purpose, management, labor control, customers, scope of work, use of equipment and services . . . ," to plaintiffs' detriment (Item 18, ¶¶ 37-38). Plaintiffs seek to hold Bill and John Farrell "personally, jointly, and individually" liable for the unpaid contributions and membership dues alleged to be due and owing to the Funds from May 1, 2004 onward (*id.* at ¶ 39 & Prayer for Relief, ¶ 7).

Bill and John Farrell move for partial summary judgment to dismiss the third cause of action based on the argument that neither individual defendant can be held personally liable for the obligations contained in the collective bargaining agreement between A.W. Farrell and the Union, and that plaintiffs have failed to produce any evidence that Roof Craft was established in an attempt to intentionally defraud the Union or the Funds. The

individual defendants also seek an award of attorney's fees and costs related to this motion, pursuant to ERISA section 502(g)(1).

## DISCUSSION

**I.      Summary Judgment Standards**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Summary Judgment cannot be entered "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Yurman Design, Inc. v. Golden Treasure Imps., Inc*., 275 F. Supp. 2d 506, 508 (S.D.N.Y. 2003).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224

(2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

II.     **Defendants' Motion for Partial Summary Judgment**

ERISA section 515 imposes a statutory obligation to make contributions to employee benefit funds on "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . ." 29 U.S.C. § 1145.  Generally, an individual officer will not be held personally liable for corporate ERISA obligations "solely by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993).  Instead, the court must determine whether "special circumstances, beyond an individual's officer status or corporate duties, might warrant the imposition of personal liability for a corporation's ERISA obligations." *Id*. (citing *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1220-21 (2d Cir. 1987)).  Examples of these "special circumstances" include (1) knowing participation in a breach of ERISA fiduciary duties, (2) conspiring to divert ERISA funds for personal benefit, (3) intermingling personal and corporate assets, (4) engaging in fraudulent conduct, or (5) where the individual is in fact the corporation or the corporation's "alter ego."  *See Finkel v. Frattarelli Bros. Inc.*, 2008 WL 2483291 at *13 (E.D.N.Y. June 17, 2008).

The Second Circuit has held that in "extraordinary cases" an individual corporate officer who did not sign the collective bargaining agreement in an individual capacity may nonetheless be held personally liable for the corporation's delinquent ERISA contributions where that individual "has committed fraud . . . or acted in concert with a fiduciary to breach

a fiduciary obligation . . . ." *Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (citing *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir. 1989) (corporate officer convicted of criminal conspiracy to defraud the funds held liable for ERISA obligations) and *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992) (parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries)).

*Lollo* established a two-step inquiry to determine whether a corporate official should be held personally liable for fraudulent conduct. First, the court must determine whether the individual is a "controlling corporate official" by "examin[ing] the officer's actual role in the company's affairs and relationship to the company's wrongdoing." *Lollo*, 35 F.3d at 33; *see also N.Y. City Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, 2008 WL 5159777 at *7 (S.D.N.Y. December 9, 2008) (evidence of individual's actual operational control over corporate affairs and involvement in fraud weighs in favor of finding personal liability). Second, the court must determine whether plaintiffs have established the common law elements of fraud, which include (1) a material false representation or omission of an existing fact, (2) knowledge of its falsity, (3) intent to defraud, (4) reasonable reliance, and (5) damages. *Lollo*, 35 F.3d at 33; *see also Finkel*, 2008 WL 2483291 at *13 (finding numerous material factual disputes regarding fraudulent conduct precluding summary judgment on personal liability of corporate officials).

In this case, plaintiffs claim that Bill and John Farrell should be held personally liable for the delinquent ERISA contributions and membership dues sought as damages because

of their direct involvement in the establishment and operation of Roof Craft as an "alter ego" of A.W. Farrell. Plaintiffs cite *Burke v. Hamilton Equipment Installers, Inc.*, 2006 WL 3831380 (W.D.N.Y. 2006), *aff'd*, 528 F.3d 108 (2d Cir. 2008), in which the district court found after a bench trial that the "withdrawal liability"[1] incurred by a signatory to a collective bargaining agreement with the Buffalo Carpenters Pension Fund could be attributed to a successor entity under the alter ego theory. The court explained that this theory arises not directly from any particular statutory provision, "but rather from a general federal policy of piercing the corporate veil when necessary to protect employee benefits." *Id.*, 2006 WL 3831380 at *5 (quoting *New York Sate Teamsters Conference Pension & Retirement Fund v. Express Services, Inc.*, 426 F.3d 640, 647 (2d Cir. 2005)). "The rationale is that an employer who evades his pension responsibilities gains an unearned advantage in his labor activities. Moreover, underlying congressional policy behind ERISA clearly favors the disregard of the corporate entity in cases where employees are denied their pension benefits." *Mass. Carpenters Central Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998), *quoted in Burke*, 2006 WL 3831380 at *5 (internal quotes and citation omitted).

As noted in *Burke*, the issue of whether a nonsignatory of a collective bargaining agreement may be liable for ERISA obligations as an alter ego of a signatory is a question for the finder of fact. *Burke*, 2006 WL 3831380 at *6 (citing *LaBarbera v. C. Volante Corp.*,

---

[1] As explained in *Burke*, under the statutory "withdrawal liability" scheme imposed by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), employers who terminate their participation in a multiemployer pension plan "are required to pay their proportionate share of the plan's 'unfunded vested benefits' calculated as the difference between the present value of the vested benefits and the current value of the plan's assets." *Burke*, 2006 WL 3831380 at *4 (quoting *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217 (1986), citing 29 U.S.C. §§ 1381, 1383(a)).

164 F. Supp. 2d 321, 327 (E.D.N.Y. 2001) ("Whether companies are alter egos is a question of fact."). The touchstone of the inquiry is commonality of management, business purpose, operations, equipment, customers, supervision, and ownership. *See Newspaper Guild of N.Y. v. NLRB*, 261 F.3d 291, 294 (2d Cir. 2001); *see also Express Services*, 426 F.3d at 649-50. "The focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir. 1996).

Plaintiffs cite to evidence produced in discovery suggesting substantial commonality of ownership, management, business purpose, equipment, customers, and supervision of the A.W. Farrell and Roof Craft companies, as well as conduct on the part of Bill and John Farrell to support a finding of personal liability. Merely by way of example, Bill Farrell testified at his June 27, 2008 deposition that he was involved in the acquisition of Roof Craft by his daughter Kathleen and his son Mark as a function of his own personal estate planning (*see* Item 25, Att. 1, Bill Farrell Dep. at 16-17). Bill Farrell owns both properties in Erie where the Roof Craft and A.W. Farrell facilities are located, and neither company pays him rent (*id*. at 89-90). With respect to John Farrell, plaintiffs have submitted the deposition testimony of Brian Fenno, Roof Craft's branch manager in Erie, indicating that John actively participated in the establishment of Roof Craft's Erie location (*see, e.g., id.*, Fenno Dep. at 42-43, 46-47). Plaintiffs have also submitted the deposition testimony of Trustee Jack Lee indicating his personal knowledge that Roof Craft has on occasion used equipment owned by A.W. Farrell (*see id.*, Lee Dep. at 30-31), and that A.W. Farrell

employees performed work for Roof Craft (*see id*. at 31-33; *see also* Item 23, Att. 5, p. 103).

Considered as a whole, and drawing all reasonable inferences in favor of plaintiffs, this evidence could be considered by a trier of fact as sufficient to show that both Bill and John Farrell actively participated in the establishment of Roof Craft with the intent to defraud the Funds by avoiding A.W. Farrell's responsibilities under the collective bargaining agreement. Accordingly, the court finds that the individual defendants have failed to meet their burden of demonstrating the absence of any genuine issues of material fact to warrant entry of judgment in their favor as a matter of law on plaintiffs' third cause of action.

## **CONCLUSION**

The motion of defendants John W. Farrell and John T. Farrell for partial summary judgment (Item 20) is denied, as is their request for related attorney's fees and costs.

A telephone conference is scheduled for April 5, 2010 at 11 a.m. to discuss a schedule for further proceedings in the case. The court will initiate the call.

So ordered.

\_\_\_\_\_\s\ John T. Curtin\_
JOHN T. CURTIN
United States District Judge

Dated: 3/3 , 2010
p:\pending\2007\07-224.jan7.10