UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED UNION OF ROOFERS,
WATERPROOFERS, AND ALLIED WORKERS,
LOCAL NO. 210, AFL-CIO,
and
JACK LEE and GEOFFREY MCCREARY,
in their capacities as TRUSTEES of the
UNITED UNION OF ROOFERS, WATERPROOFERS,
AND ALLIED WORKERS, LOCAL UNION NO. 210
MONEY PURCHASE PENSION PLAN and
ROOFERS LOCAL UNION NO. 210 JOINT
HEALTH & WELFARE PROGRAM,

                              Plaintiffs,                      07-CV-224-HKS

                              -vs-

A. W. FARRELL & SON, INC.,
ROOF CRAFT SYSTEMS, INC.,
JOHN W. FARRELL, a/k/a Bill Farrell, and
JOHN T. FARRELL,

                              Defendants.

---

      Plaintiffs United Union of Roofers, Waterproofers, and Allied Workers, Local No. 210, AFL-CIO ("Local 210"), and Jack Lee and Geoffrey McCreary, Trustees of Local 210's Money Purchase Pension Plan and Joint Health & Welfare Program (the "Funds"), brought this action against corporate defendants A.W. Farrell & Son, Inc. ("AWF") and Roof Craft Systems, Inc. ("RCS"), and against individual defendants John W. ("Bill") Farrell and John T. ("John") Farrell, seeking  declaratory, injunctive, and other equitable relief pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.  Plaintiffs alleged that Bill and John Farrell established a branch

of RCS in Erie, Pennsylvania, as a non-union shop, in order to avoid their obligations under ERISA to contribute to the Funds and pay union dues based on hours worked by RCS employees within the territorial jurisdiction of the Collective Bargaining Agreement ("CBA") between Local 210 and signatory employers. Plaintiffs claimed that RCS-Erie was set up as an "alter ego" of, or shared "single-employer status" with, AWF, making RCS liable for the same contribution obligations as AWF (Am. Com. ¶ 29), and that Bill and John Farrell should be found "personally, jointly, and individually liable" for the avoided contributions "due to their intentionally fraudulent acts …." (Id. at ¶ 39).

Upon consent of the parties pursuant to 28 U.S.C. § 636(c), a non-jury trial was held before the undersigned over the course of eleven days from November 29, 2011 through December 22, 2011. In a Memorandum of Decision entered on September 10, 2012, this Court found in favor of defendants and dismissed the complaint in its entirety. Dkt. #87. Plaintiffs filed a Notice of Appeal on October 5, 2012. Dkt. #91.

Defendants now seek an award of attorney's fees pursuant to ERISA § 1132(g)(1), which provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions
>
> (1) In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §1132(g)(1).

Prior to the Supreme Court's recent decision in *Hardt v. Reliance Standard Life Insurance Company*, 560 U.S. ___, 130 S.Ct. 2149 (2010), courts in the Second Circuit

were required to consider the following five factors to determine whether to award attorney's fees under this "fee-shifting" provision:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). In *Hardt*, the Supreme Court held that these five factors[1] "bear no obvious relation to [Section] 1132(g)(1)'s text or to [the Court's] fee-shifting jurisprudence, [and therefore] are not required for channeling a court's discretion when awarding fees." *Hardt*, 130 S.Ct. at 2158 (emphasis added). Rather, the proper standard for determining whether a fee claimant is eligible for § 1132(g)(1) fees is whether the claimant has achieved " 'some degree of success on the merits ....' " *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

The Second Circuit has since commented that *Hardt* did not foreclose application of the *Chambless* factors in deciding whether to award attorney's fees under ERISA § 1132(g)(1):

> *Hardt*'s recognition that courts need not apply the *Chambless* factors does not mean … that the district court abuse[s] its discretion when it use[s] the *Chambless* factors to structure its analysis. A court may apply—but is not required to apply—the *Chambless* factors in "channeling [its] discretion when awarding fees" under § 1132(g)(1). So long as a party has achieved "some degree of success on the merits," a "court in its discretion may allow a

---

[1] *Hardt* involved an appeal from the United States Court of Appeals for the Fourth Circuit, which has analyzed attorney's fee applications under ERISA § 1132(g)(1) by applying factors nearly identical to those discussed in *Chambless*. *See, e.g., Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993).

reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Thus, a district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved "some degree of success on the merits," but it is not required to award fees simply because this pre-condition has been met.

*Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110-11 (2d Cir. 2011) (quoting *Hardt*, 130 S.Ct. at 2158 & n.8); *cf. Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 542 (S.D.N.Y. 2011) (concluding that " 'some success on the merits' ... is all a fee claimant must show to be eligible to collect attorneys' fees.").

In *Toussaint*, the defendants had prevailed on their motion for summary judgment dismissing the breach of fiduciary duty claims made against them by participants in an ERISA employee benefit plan, but the district court – applying the *Chambless* factors in a ruling made prior to the Supreme Court's decision in *Hardt* – denied the defendants' subsequent motion for attorney's fees under ERISA § 1132(g)(1). The Second Circuit affirmed the denial of the fee application, stating:

> [A]lthough the district court did not have the benefit of *Hardt* in reaching its decision, nothing in the district court's opinion contradicts *Hardt* or suggests that the district court would have decided the matter differently in light of *Hardt*. Accordingly, *Hardt* does not require us to reverse or remand. *Hardt* also does not disturb our observation that "the five [*Chambless*] factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." This "favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith." For this reason, when determining whether attorney's fees should be awarded to defendants, we focus on the first *Chambless* factor: whether plaintiffs brought the complaint in good faith.

*Toussaint*, 648 F.3d at 111 (quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) (internal quotation marks omitted)).

As explained at further length in *Salovaara*:

> [C]ourts have found that the culpability of a losing plaintiff significantly differs from that of a losing defendant: A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found culpable, but may be only in error or unable to prove his case. Because ERISA was primarily intended to protect the interests of plan beneficiaries and participants, this bias in the standard does not thwart the legislative injunctive that attorney's fees may be awarded to either party in the court's discretion. To the contrary, the favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith-the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights.

*Salovaara*, 222 F.3d at 28 (internal quotation marks and citations omitted).

Following this guidance here, and acknowledging defendants' considerable degree of success after full trial on the merits as reflected in this Court's September 10, 2012 Memorandum and Decision, the Court turns to a consideration of the analysis outlined in *Chambless*, with particular focus on the first factor.

    1.    *Whether Plaintiffs Brought the Complaint in Good Faith*

Defendants contend that plaintiffs' bad faith in bringing this action is amply demonstrated by the complete absence of evidence at trial to support the allegations that John and Bill Farrell "intentionally and fraudulently established, operated and/or maintained [RCS-Erie] as an alter ego corporation to [AWF] in order to evade the obligations of the defendants pursuant to the CBA, to the detriment of plaintiffs." Dkt. #18 (Amended Complaint), ¶ 37-39. As this Court recognized in its Memorandum of Decision, "both the former and current business managers of Local 210 testified at trial that they had no knowledge or information regarding any fraudulent conduct, or any concerted action to avoid CBA obligations, on the part of either Bill or John Farrell." Dkt. #87, p. 33, ¶46.

However, under the instruction of the Second Circuit's holding in *Salovaara*, plaintiffs' ultimate failure to present evidentiary support at trial for their claims regarding Bill or John Farrell's individual liability does not automatically lead to a finding that the claims were brought in bad faith. *See Salovaara*, 222 F.3d at 29-30 (citing *Cline v. Industrial Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000) ("[I]n order to avoid a finding of bad faith ..., plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim. While [the plaintiffs] failed to prove any of their claims, ... a reasonable basis existed for [plaintiffs] to make their claims."); *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 414 (9th Cir. 1994) (denying the defendants' request for attorney's fees under ERISA because the plaintiffs' claims "were neither frivolous nor made in bad faith, and were supported by existing out-of-circuit law or good faith arguments to extend, modify, or reverse the law of this Circuit"), *cert. denied*, 514 U.S. 1027 (1995)). Indeed, in ruling on defendants' motion for partial summary judgment as to Bill and John Farrell's individual liability, Hon. John T. Curtin (the District Judge presiding over this action prior to the parties' consent to have the undersigned conduct all further proceedings) determined that the evidence produced during discovery regarding the commonality of ownership, management, business purpose, equipment, customers, and supervision of the AWF and RCS companies, as well as the conduct of Bill and John Farrell in establishing RCS, when regarded as a whole and viewed in the light most favorable to plaintiffs, "could be considered by a trier of fact as sufficient to show that both Bill and John Farrell actively participated in the establishment of Roof Craft with the intent to defraud the Funds by avoiding A.W. Farrell's responsibilities under the [CBA]." Dkt. #28, p. 9. This ruling alone

provides ample support for plaintiffs' position in opposition to this fee application that a reasonable basis existed for them to pursue their ERISA claims.

In addition, although this Court (as the trier of fact) subsequently concluded that plaintiffs failed to meet their ultimate burden under the law to establish single employer or alter ego status on the part of the corporate defendants, or fraud on the part of the individual defendants, this conclusion was based upon the preponderance of the evidence presented during the eleven-day trial by way of the testimony of seventeen witnesses (which produced 1778 pages of trial transcript) and thousands of pages of exhibits, and upon full consideration of the reasoned arguments of counsel made throughout the course of the trial and in the parties' post-trial submissions. Significantly, this Court found nothing in the extensive record to suggest that any of the claims were brought in bad faith, or for any purpose other than to promote the interests of plan beneficiaries by enforcing their statutory and contractual rights to pension and welfare fund contributions and union dues based on hours worked by covered employees within the territorial jurisdiction of the CBA. In the absence of such a showing, and considering "the favorable slant toward ERISA plaintiffs … necessary to prevent the chilling of suits brought in good faith," *Jones v. O'Higgins*, 736 F. Supp. 1243, 1245 (N.D.N.Y. 1990), *quoted in Salovaara*, 222 F.3d at 28, the Court cannot find that plaintiffs' failure to succeed on the merits of their claims against the corporate or individual defendants necessarily leads to the conclusion that the claims were frivolous or brought in bad faith.

Accordingly, consideration of the first *Chambless* factor weighs against granting defendants' fee application.

2. *The Ability of the Offending Party to Satisfy an Award of Attorney's Fees*

Plaintiffs have submitted the declaration of Mark Stulmaker, Esq., counsel to the Trustees of the Funds, with personal knowledge of the Funds' financial condition and operations. Dkt. #92-2. According to Mr. Stulmaker, any award of attorney's fees charged against the Funds would directly deplete Local 210 members' retirement accounts and/or diminish the funds available for members' health care coverage. In the Court's view, and in the absence of any countervailing showing by defendants, this result would be contrary to ERISA's "essential remedial purpose" to protect beneficiaries of pension and welfare plans. *Salovaara*, 222 F.3d at 28 (quoting *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128-29 (7th Cir. 1991)).

Accordingly, consideration of this factor also weighs against granting defendants' fee application.

3. *Whether an Award of Fees Would Deter Other Persons from Acting Similarly Under like Circumstances*

*Salovaara* again provides pertinent guidance for considering the "deterrence" factor:

> [W]here, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant. Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose of protecting beneficiaries of pension plans. … This consideration is even more significant in a case such as this, where the plaintiff is a fiduciary under ERISA.

*Salovaara*, 222 F.3d at 31 (emphasis in original; citing *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir. 2000) (concluding that the district court had erred in using "the third deterrent

factor as a sword to discourage beneficiaries" from pursuing certain meritless claims, "rather than as this factor was intended to be used, as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail. Clearly, Congress intended the fee provisions of ERISA to encourage beneficiaries to assert their rights without fear of being responsible for the fees and costs of their opponent's attorneys if they failed to prevail.")).

Accordingly, this factor also weighs against awarding defendants attorney's fees.

4.   *The Relative Merits of the Parties' Positions*

As discussed above with regard to the first *Chambless* factor, although plaintiffs were not successful in proving their claims, their position in this litigation with respect to the conduct of the individual defendants in establishing RCS-Erie was neither frivolous nor made in bad faith.  Accordingly, on balance, the relative merits of the parties' positions in this litigation do not significantly offset the "favorable slant" to be accorded to plaintiffs in considering defendants' attorney's fee application.

5.   *Whether the Action Conferred a Common Benefit on Plan Participants*

Defendants have identified no common benefit to participants conferred as a result of their successful defense of this action.  Indeed, as noted above, an attorney's fee award charged against the Funds in this case would have the result of decreasing Local 210 members' retirement accounts or diminishing the funds available for members' health care coverage.  "Thus, far from conferring a common benefit or protecting fund beneficiaries," *Frosco v. Pyramid Cos. III*, 2 F.App'x 121, 125 (2d Cir. 2001), this result would cause

further expenditure of limited benefit funds already depleted by the cost of a good-faith, albeit unsuccessful, pursuit of delinquent ERISA contributions.

Accordingly, consideration of the final *Chambless* factor weighs against granting defendants' fee application.

## CONCLUSION

For the foregoing reasons, defendants' application (Dkt. #92) for an award of attorney's fees pursuant to ERISA § 1132(g)(1) is denied.

So Ordered.

>     \s\ H. Kenneth Schroeder, Jr.
> Honorable H. Kenneth Schroeder, Jr.
> United States Magistrate Judge

Dated:   Buffalo, New York
         January 10, 2013